IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| North Dakota Farm Bureau, Inc.;<br>Galegher Farms, Inc.;<br>Brian Gerrits; and<br>Breeze Dairy Group, LLC,<br><br>            Plaintiffs,<br><br>v.<br><br>Wayne Stenehjem, in his official<br>Capacity as Attorney General of<br>North Dakota.<br><br>            Defendant. | Case No. 1:16-cv-137<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Plaintiffs, for their Complaint in the above-referenced action state and allege as follows:

## NATURE OF ACTION

1.     This action challenges the validity of Chapter 10-06.1 of the North Dakota Century Code under the United States Constitution. Chapter 10-06.1 is commonly referred to as the North Dakota Anti-Corporate Farming Act. Chapter 10-06.1 makes unlawful most corporate and other limited liability ownership of farms and most farming in corporate or other limited liability form.

2.     N.D. Cent. Code § 10-06.1-02 provides: "All corporations and limited liability companies, except as otherwise provided in this chapter, are prohibited from owning or leasing land used for farming or ranching and from engaging in the business of farming or ranching. A corporation or a limited liability company may be a partner in a partnership that is in the business of farming or ranching only if that corporation or limited liability company complies with this chapter."

3.   Chapter 10-06.1 makes it unlawful for North Dakota farmers to utilize commonplace and established methods of doing business that would be beneficial to the economic viability of their operations. Chapter 10-06.1 also limits the ability of North Dakota farmers to obtain investors which adversely affects their ability to secure financing which is crucial to keeping their farming operations viable. Chapter 10-06.1 also lowers the value of North Dakota farms as it strictly limits the pool of potential buyers. Further, Chapter 10-06.1 interferes with the flow of interstate commerce by prohibiting any and all corporations organized under the laws of all other states from investing in North Dakota farming operations or from owning or leasing North Dakota farmland. This strict prohibition against out-of-state corporations, which contains no exceptions, blatantly discriminates against citizens of other states and interferes with their fundamental right to practice their occupation or pursue a common calling within the State of North Dakota.

4.   Chapter 10-06.1's broad prohibition against corporate involvement in agriculture deprives Plaintiffs and members of North Dakota Farm Bureau of federal constitutional and statutory protections. Chapter 10-06.1 violates the Commerce Clause of Article I, Section 8 of the United States Constitution because it discriminates against and unduly burdens interstate commerce on its face, by its purpose, and by its effects. Chapter 10-06.1 violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution because it discriminates against and interferes with the fundamental rights of nonresidents of North Dakota on its face, by its purpose, and by its effects. Chapter 10-06.1 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it irrationally and arbitrarily treats similarly situated persons differently.

5.   Plaintiffs seek redress from the denial of their constitutional and statutory rights in

the form of a declaration that Chapter 10-06.1 is unconstitutional and an injunction against enforcement of Chapter 10-06.1 by the Defendant.

## PARTIES

6. Plaintiff North Dakota Farm Bureau is a non-profit corporation organized under the laws of North Dakota, with its principle place of business in Fargo, North Dakota. North Dakota Farm Bureau's voluntary membership consists of farm, ranch, and rural families residing in North Dakota, whose social and economic interests it strives to advance.

7. Plaintiff Galegher Farms, Incorporated is a farming corporation organized under the laws of North Dakota, with its principle place of business in Thompson, North Dakota.

8. Plaintiff Brian Gerrits is an individual who resides in De Pere, Wisconsin. Brian Gerrits is a member of a limited liability company that engages in dairy farming.

9. Plaintiff Breeze Dairy Group, LLC is a limited liability corporation organized under the laws of Wisconsin. Breeze Dairy Group is a dairy farming operation.

10. Defendant Wayne Stenehjem is the Attorney General for the State of North Dakota. The Attorney General is charged with enforcing the North Dakota Anti-Corporate Farming Act. N.D. Cent. Code § 10-06.1-24(1).

## JURISDICTION

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1343(3), 2201, and 2202. This action arises under the Constitution and laws of the United States. Plaintiffs seek a declaration that Chapter 10-06.1 violates the Commerce Clause of the U.S. Constitution (Art. 1, § 8); the Privileges and Immunities Clause of the U.S. Constitution (Art. IV, § 2); the Equal Protection Clause of the U.S. Constitution (Amend. XIV); and 42 U.S.C. § 1983. Plaintiffs also request permanent injunctive relief prohibiting enforcement of Chapter 10-06.1 as

well as other appropriate relief, including attorneys' fees under 42 U.S.C. §§ 1988.

## VENUE

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Defendant resides in the State of North Dakota or has an interest in property in the State of North Dakota. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) as the events giving rise to the claim occurred in this district and the property involved is located in this district.

## BACKGROUND

### NORTH DAKOTA'S ANTI-CORPORATE FARMING ACT

13. North Dakota's ban on corporate farming started in 1932 through an initiated measure. The law prohibited all corporations from engaging in the business of farming and prohibited all corporations from owning farm land. North Dakota's Anti-Corporate Farming legislation has been subject to many amendments.

14. The current version of the corporate farming prohibition states:

> All corporations and limited liability companies, except as otherwise provided in this chapter, are prohibited from owning or leasing land used for farming or ranching and from engaging in the business of farming or ranching. A corporation or a limited liability company may be a partner in a partnership that is in the business of farming or ranching only if that corporation or limited liability company complies with this chapter.

N.D. Cent. Code § 10-06.1-02.

15. In 1981, the North Dakota legislature significantly revised the laws relating to prohibitions on corporate farming. The legislature retained the general prohibition on corporations engaging in farming or owning farm land but created an exception for family-owned corporations. However, this exception only applied to "domestic" corporations. No exceptions were created for any out-of-state corporations – even those that were family owned and operated. When the revisions to the legislation were proposed, multiple comments were

made referencing the need to ensure that the legislation prevents "outside" corporations from coming into the State and purchasing agricultural land.

16. The legislation was again amended in 1985. While most of the 1985 amendments related to the narrow exception applicable to nonprofit organizations, the language relating to the kinship requirements was also slightly amended. During the committee meetings surrounding the 1985 amendments, comments were again made regarding the necessity for farmland in North Dakota to remain "controlled by the farmers, not out-of-state corporations."

17. Revisions to the Anti-Corporate Farming legislation occurred again in 1993. However, these revisions related mostly to the structure of the legislation.

18. Ten years later, in 2003, HB 1396 was introduced which would have allowed unrelated individuals to become members of corporations engaged in farming activities. Extensive testimony was given during the committee meetings surrounding the proposed 2003 amendments. The testimony included ample statements urging the North Dakota legislature to defeat HB 1396 in order to protect North Dakota from "outside interests" that would give unwanted "competition" to North Dakota Farmers. The testimony of one individual stated that if the legislature were to pass HB 1396 and open "the door to unrelated, outside investors" it would be "sending the message" that it had "given up on the next generation of North Dakotans." Another individual asked legislators if North Dakota was so "desperate for outside capital" that the legislature was "willing to sell out our state's soul" in the name of economic development. Not surprisingly, HB 1396 was defeated.

19. More recently, in 2015, the North Dakota Legislature introduced SB 2351, which proposed to amend Chapter 10-06.1 by granting a narrow exception to domestic corporations involved in operating small dairy or swine operations. Again, copious amounts of testimony was

received that mirrored the testimony previously received in 1981, 1985, and 2003. However, new comments emerged from members of the North Dakota legislature stating they were concerned that outside migrant workers would be coming into the state in order to work for the farming corporations and those migrant workers would utilize North Dakota tax dollars for benefits such as food stamps. Two North Dakota legislators also commented that Chapter 10-06.1 appears to be unconstitutional and that they believed if the legislation was challenged, it would be held unconstitutional by the 8th Circuit Court of Appeals.

20. Regardless of the acknowledgment by members of the North Dakota Legislature that Chapter 10-06.1 appears to be unconstitutional, the Anti-Corporate Farming Legislation still stands and is still being enforced by the Attorney General. The current version of the domestic, family-owned corporation exemption states, in part:

> This chapter does not prohibit a <u>domestic</u> corporation or a <u>domestic</u> limited liability company from owning real estate and engaging in the business of farming or ranching, if the corporation meets all the requirements of chapter 10-19.1 or the limited liability company meets all the requirements of chapter 10-32 which are not inconsistent with this chapter.  The following requirements also apply:
> . . .
> 2. <u>Each shareholder or member must be related to each of the other shareholders or members within one of the following degrees of kinship or affinity</u>: parent, son, daughter, stepson, stepdaughter, grandparent, grandson, granddaughter, brother, sister, uncle, aunt, nephew, niece, great-grandparent, great-grandchild, first cousin, or the spouse of a person so related.
> . . .
> 6. If a corporation, the officers and directors of the corporation must be shareholders who are actively engaged in operating the farm or ranch and <u>at least one of the corporation's shareholders must be an individual residing on or operating the farm or ranch</u>.  If a limited liability company, the governors and managers of the limited liability company must be members who are actively engaged in operating the farm or ranch and <u>at least one of its members must be an individual residing on or operating the farm or ranch</u>.

N.D. Cent. Code § 10-06.1-12 (emphasis added).

21.     Similar language has twice been struck down as unconstitutional by the 8th Circuit Court of Appeals. In 2003, South Dakota's Amendment E was held to violate the Dormant Commerce Clause. S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583 (8th Cir. 2003). Three years later, in 2006, Nebraska's Initiative 300 was also held to violate the Dormant Commerce Clause. Jones v. Gale, 470 F.3d 1261 (8th Cir. 2006).

22.     In Hazeltine, South Dakota's Constitution, based on Amendment E, stated: "[N]o corporation or syndicate may acquire, or otherwise obtain an interest . . . in any real estate used for farming in this state, or engage in farming." Hazeltine, 340 F.3d at 687 (citing S.D. Const. art. XVII, § 21). An exception existed for family farm or ranching corporations where at least one of the family members either resided on or was actively engaged in the "day-to-day labor and management of the farm." Id. at 587-88. The 8th Circuit Court of Appeals held that Amendment E was motivated by a discriminatory purpose meant to disadvantage out-of-state residents and that it violated the Dormant Commerce Clause. Id. at 596-97.

23.     The language at issue in Jones stated: "No corporation or syndicate shall acquire, or otherwise obtain an interest . . . in any title to real estate used for farming or ranching in this state, or engage in farming or ranching." Neb. Const. art. XII, § 8. An exception to the prohibition against corporate farming existed for family farm or ranch corporations where at least one member was "a person residing on or actively engaged in the day to day labor and management of the farm or ranch . . . ." Id. The 8th Circuit Court of Appeals held that this language was facially discriminatory as it favored Nebraska residents and "people who are in such close proximity to Nebraska farms and ranches that a daily commute is physically and economically feasible for them." Jones, 470 F.3d at 1268. The Jones Court further held that

7

Initiative 300, and the corresponding provision of the Nebraska Constitution, violated "the dormant commerce clause both on its face and based on its discriminatory intent." Id. at 1270.

24. After reviewing the analyses conducted by 8th Circuit Court of Appeals in both Hazeltine and Jones, one federal judge in North Dakota stated that "legitimate constitutional questions about North Dakota's Act" had been raised. Nat'l Audubon Soc'y, Inc. v. Stenehjem, 2010 U.S. Dist. LEXIS 52279, *9, 2010 WL 2231809 (D.N.D. May 26, 2010).

25. While much of the language in Chapter 10-06.1 closely mirrors the language held unconstitutional in both Hazeltine and Jones, the language contained in North Dakota's Anti-Corporate Farming Legislation is even more transparently facially discriminatory. The narrow family farming and ranching corporation exceptions contained in Chapter 10-06.1 only apply to "a domestic corporation or a domestic limited liability company . . . ." N.D. Cent. Code 10-06.1-12 (emphasis added). "Domestic Corporation" is defined as "a corporation, other than a foreign corporation, organized for profit and incorporated under or governed by this chapter." N.D. Cent. Code § 10-19.1-01(16). Conversely, a "Foreign Corporation" is defined as "a corporation . . . which is incorporated under laws other than the laws of this state . . . ." N.D. Cent. Code § 10-19.1-01(26). The plain language of the North Dakota Anti-Corporate Farming Act is blatantly facially discriminatory against out-of-state corporations.

26. Further, the classifications contained in the family farming corporation exception are irrational, illogical and bear no rational relationship to a legitimate government interest. In fact, the kinship classifications frustrate the purported purpose of the legislation. Chapter 10-06.1 has largely been publicized as a way to save North Dakota family farms. However, the kinship requirements are so arbitrary and limiting that they are making it impossible for many North Dakota families, who in some instances have been farming for generations, to continue their

family farming operations.

## THE IMPACT OF THE ANTI-CORPORATE FARMING ACT ON PLAINTIFFS

27. Compliance with Chapter 10-06.1, and the enforcement activities of the Attorney General, has caused, and will continue to cause, irreparable injury to the Plaintiffs, for which no adequate remedy at law exists.

### North Dakota Farm Bureau

28. Plaintiff North Dakota Farm Bureau ("NDFB") is an independent, non-governmental entity made up of over 50 organized county Farm Bureaus.

29. NDFB represents the interests of more than 26,000 voluntary member farm, ranch, and rural families in the State of North Dakota.

30. The mission of NDFB is to advocate for agriculture and enhance the economic opportunities of their membership while promoting individual freedoms and self-reliance. NDFB strives to meet the needs of its members by providing beneficial services which encourage sound economics in the farming community.

31. Chapter 10-06.1 harms NDFB as it interferes with NDFB's ability to fulfill its organizational purpose. Chapter 10-06.1 prohibits North Dakota's family farmers from utilizing beneficial business structures and severely limits the value of their farms and ranches.

32. Chapter 10-06.1 also harms NDFB's members as it adversely affects NDFB members' farming businesses and their economic well-being. There are NDFB members who wish to incorporate, or to enter into business relationships with corporations, and who are barred from doing so under Chapter 10-06.1.

33. In bringing this Complaint, NDFB's aim is to obtain declaratory and injunctive relief from the Court, thus remedying these injuries both to its members and to its mission.

NDFB's claims and requested remedies on behalf of its members do not require individualized proof and are properly resolved in the group context.

### Galegher Farms, Incorporated

34. Plaintiff Galegher Farms, Incorporated ("Galegher Farms") is a North Dakota corporation which was established in 1986.

35. Galegher Farms leases approximately 3100 acres of North Dakota farmland for crop farming purposes.

36. While Galegher Farms was not incorporated until 1986, the Galegher family has been farming North Dakota land since Edward Galegher homesteaded in North Dakota in the 1870's. The Galegher family has now been farming for four generations.

37. Galegher Farms is operated by its President, John Galegher, Jr. ("John"), and its Vice-President, Paul Galegher ("Paul"). John and Paul are first cousins who currently meet all kinship requirements contained in N.D. Cent. Code § 10-06.1-12.

38. John has three children, two daughters and one son. John's son, Andrew Galegher ("Andrew"), has now started farming North Dakota land and is interested in becoming a shareholder of the family farming business, Galegher Farms.

39. Paul has a nephew, David Hovet ("David"), who is the son of Paul's sister. David has previously worked as an employee of Galegher Farms. Recently, David purchased his own quarter of North Dakota farmland and has expressed interest in becoming a shareholder of the family farming business, Galegher Farms.

40. Chapter 10-06.1 harms Galegher Farms as it prohibits Galegher Farms from allowing Andrew and David to become shareholders since the shareholders, while all family members, would not meet the kinship requirements contained in N.D.C.C. § 10-06.1-12. Chapter

10-06.1 is prohibiting Galegher Farms from allowing the fifth generation of Galegher's to carry on the tradition of their ancestors and join the family farming business.

41. Accordingly, Galegher Farms has been, and will continue to be, irreparably harmed by Chapter 10-0-6.

### Brian Gerrits

42. Plaintiff Brian Gerrits ("Brian") is a resident of the State of Wisconsin.

43. Brian has been a dairy farmer for over twenty-five years. In 1989, Brian received an Outstanding Young Farmer Award and won a trip to Florida. At the time, Brian's Wisconsin dairy farm consisted of 60 cows. Brian's trip to Florida included a tour of a large dairy farm that had approximately 500 cows. Brian realized that the future of dairy farming was changing, and he needed to change the way he was operating in order to remain viable.

44. After returning home to Wisconsin, Brian visited the Agriculture and Natural Resources Extension through the University of Wisconsin in order to discover new methodologies that would allow his dairy farm to grow into a more productive enterprise while still remaining environmentally responsible.

45. Brian, along with four other family farmers, eventually determined the best option available to them was to merge their resources. Based on that decision, Brian and the other family dairy farmers created a limited liability company, which was formed under the laws of Wisconsin.

46. Brian's personal income is largely derived from his membership in that limited liability company.

47. Chapter 10-06.1 harms Brian as it limits his ability to derive additional personal income from his membership in a limited liability company which is prohibited from expanding

its operations into North Dakota. Chapter 10-06.1 prohibits Brian from seeking to practice his occupation and pursue his calling within the State of North Dakota through his chosen business entity.

48.     Accordingly, Brian has been, and will continue to be, irreparably harmed by Chapter 10-06.1.

## Breeze Dairy Group, LLC

49.     Plaintiff Breeze Dairy Group, LLC ("Breeze Dairy") is a Limited Liability Company incorporated in the State of Wisconsin.

50.     Breeze Dairy was founded in 2003 in response to the changing farming economy. In 2002, five families that operated their own individual family dairy farms were struggling to keep their family farms successfully operating and decided to look for new ways to secure economic viability for their family farming operations. These families – the Diederich family, the Gerrits family, the Davis family, the Schwenck family, and the Thiel family - determined that the best option available to them under Wisconsin law was to merge their resources and their respective dairy operations into a single limited liability company.

51.     The formation of the limited liability company has allowed their five families to continue to practice their chosen profession of dairy farming when that would not have otherwise been economically feasible. Breeze Dairy is now a successful operation with over one hundred employees. Many of Breeze Dairy's employees are former family farm owners who were unable to keep their independent farms operating. These employees are now able to continue their chosen profession of dairy farming while receiving good wages and 401k retirement benefits from Breeze Dairy.

52.     Besides allowing its five founding families the ability to keep farming, as well as

12

its employees, Breeze Dairy benefits other local farmers as well. Breeze Dairy purchases their feed from neighboring crop farmers and also allows neighboring farmers the opportunity to buy natural fertilizer at extremely competitive prices. Breeze Dairy sends samples of their manure to laboratories in order to analyze its content. Once Breeze Dairy learns the nutrient content of their manure, they are able to determine its market value per gallon. Breeze Dairy then sells their manure to local farmers at approximately half of the value of the first year available nutrients contained in the manure. Breeze Dairy also pays for the hauling and application cost of the manure. This arrangement allows Breeze Dairy to responsibly remove the waste product produced by their dairy operations while simultaneously allowing neighboring crop farmers the ability to receive natural fertilizer at approximately half the price of commercial fertilizer.

53. Breeze Dairy continues to seek to expand its operations. However, Breeze Dairy is not a "domestic corporation" as that term is defined in Chapter 10-19.1 Further, the five individual families which comprise Breeze Dairy are unrelated and therefore do not meet the kinship requirements contained in Chapter 10-06.1. Therefore, pursuant to Chapter 10-06.1, Breeze Dairy is precluded from expanding in North Dakota.

54. As such, Breeze Dairy has been, and will continue to be, irreparably harmed by Chapter 10-06.1.

## COUNT I

**Chapter 10-06.1 Violates the Commerce Clause of the United States Constitution**

55. Plaintiffs reallege the preceding paragraphs of this Complaint as if fully set forth herein.

56. This Count seeks a declaration that Chapter 10-06.1 violates the Commerce Clause of the United States Constitution, (Art. I, § 8, cl. 3), and an injunction prohibiting

enforcement of Chapter 10-06.1.

57. In all material respects, Chapter 10-06.1 is similar to South Dakota's Amendment E and Nebraska's Initiative 300. Amendment E and Initiative 300 were both held to violate the Commerce Clause by the United States Court of Appeals for the Eighth Circuit. The South Dakota, Nebraska, and North Dakota laws all prohibit corporate ownership of farm or ranch land except in the case of family farm corporations. The South Dakota, Nebraska, and North Dakota laws all require that an owner of the family farm company either reside on the farm property or that one or more owners of the family farm company be actively engaged in the farm business.

58. Chapter 10-06.1 is facially discriminatory against interstate commerce. The plain language of Chapter 10-06.1 discriminates against out-of-state business as it only allows narrow exceptions for domestic corporations while no exceptions exist for corporations created under the laws of our sister states.

59. The plain language of Chapter 10-06.1 evidences an intent and purpose to prohibit non-North Dakota ownership and operation of farm and ranch land by corporate entities.

60. The plain language of Chapter 10-06.1 requires all officers and directors of a family farm domestic corporation and all managers of a family farm domestic limited liability company to be actively engaged in operating the farm or ranch and at least one shareholder or member must reside on the farm or ranch.

61. Chapter 10-06.1 facially discriminates against out-of-state commerce by imposing greater burdens on out-of-state residents.

62. Chapter 10-06.1 creates a disparate impact on out-of-state residents and on interstate commerce by its plain language and in its purpose and effect due to the residency and operations requirement for qualification as a family farm corporation or family farm limited

liability company.

63. The plain language of Chapter 10-06.1 imposes an undue burden on interstate commerce.

64. The discriminatory effect of Chapter 10-06.1 is to unlawfully burden interstate commerce.

65. An actual controversy exists between the parties as to the constitutionality of Chapter 10-06.1.

## COUNT II

**Chapter 10-06.1 Violates the Privileges and Immunities Clause of the U.S. Constitution**

66. Plaintiffs reallege the preceding paragraphs of this Complaint as if fully set forth herein.

67. This Count seeks a declaration that Chapter 10-06.1 violates the Privileges and Immunities Clause of Art. IV, § 2 of the U.S. Constitution, and an injunction prohibiting enforcement of Chapter 10-06.1.

68. Plaintiff Brian Gerrits is an individual citizen of the state of Wisconsin and is not a resident of North Dakota.

69. Plaintiff Brian Gerrits is not related to a person residing on or operating a farm or ranch located in North Dakota.

70. Plaintiffs Brian Gerrits' occupation, activities, and investments constitute a business activity or "common calling" protected by Art. IV, § 2 of the U.S. Constitution against discrimination or unequal treatment by Defendant.

71. Although N.D. Cent. Code § 10-06.1-12 provides an exemption to Chapter 10-06.1's prohibition against corporate and limited liability company farming in North Dakota,

15

Chapter 10-06.1 on its face and in effect prevents Plaintiff Brian Gerrits, and other non-residents of the state of North Dakota, from qualifying for this exemption and the remaining exemptions thereunder.

72.   The plain language, effect, and enforcement of Chapter 10-06.1 discriminates against Plaintiff Brian Gerrits, and other non-residents of the state of North Dakota, on the basis of citizenship or residency in violation of Art. IV, § 2 of the Constitution.

73.   The exemptions to Chapter 10-06.1's general prohibition against corporate or limited liability company farming or ranching in North Dakota grants privileges to residents of North Dakota not available to Plaintiff Brian Gerrits, and other non-residents of North Dakota, on the basis of citizenship or residency in violation of Art. IV, § 2 of the U.S. Constitution.

74.   Chapter 10-06.1 unconstitutionally differentiates between residents of North Dakota and non-residents of North Dakota and deprives Plaintiff Brian Gerrits of the same privileges enjoyed by the residents of North Dakota in violation of Art. IV, § 2 of the U.S. Constitution.

75.   An actual controversy exists between the parties as to the constitutionality of Chapter 10-06.1.

## COUNT III

**Chapter 10-06.1 Violates the Equal Protection Clause of the Fourteenth Amendment**

76.   Plaintiffs reallege the preceding paragraphs of this Complaint as if fully set forth herein.

77.   This Count seeks a declaration that Chapter 10-06.1 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. It also seeks an injunction prohibiting enforcement of Chapter 10-06.1.

78.  Chapter 10-06.1, on its face and in its purpose and effect, treats similarly situated individuals differently, affording to some corporations, limited liability companies, and other persons the opportunity to own farmland or ranchland and engage in agricultural activities in North Dakota while denying this opportunity to others.

79.  The discriminatory classifications in Chapter 10-06.1 have no substantial relationship to an important government interest and bear no rational relationship to a legitimate government interest.

80.  Plaintiffs and members of North Dakota Farm Bureau are accorded unfavorable treatment under the classifications contained in Chapter 10-06.1.

81.  Chapter 10-06.1 denies Plaintiffs rights secured by the Equal Protection Clause.

82.  An actual controversy exists between the parties as to the constitutionality of Chapter 10-06.1.

## COUNT IV

### Chapter 10-06.1 Deprives Plaintiffs of Rights Guaranteed Under the U.S. Constitution in Violation of 42 U.S.C. § 1983

83.  Plaintiffs reallege the preceding paragraphs of this Complaint as if fully set forth herein.

84.  This Count is brought by Plaintiffs pursuant to 42 U.S.C. §§ 1983 and 1988, against the Attorney General in his official capacity, and seeks a declaration that Chapter 10-06.1 deprives Plaintiffs of rights guaranteed by the United States Constitution. It also seeks prospective injunctive relief restraining the enforcement of Chapter 10-06.1.

85.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

86. The Commerce Clause, the Privileges and Immunities Clause of Art. IV, § 2, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution confers rights, privileges, and immunities within the meaning of 42 U.S.C. § 1983.

87. As more fully alleged above, the Attorney General, by and through Chapter 10-06.1, is denying Plaintiffs rights secured by the Commerce Clause, Privileges and Immunities Clause, and the Equal Protection Clause. In so doing, the Attorney General is acting under color of law.

88. An actual controversy exists between the parties as to the constitutionality of Chapter 10-06.1.

WHEREFORE, Plaintiffs request this Court to render judgment on this Complaint in their favor and grant the following relief:

1. Declare that Chapter 10-06.1 interferes with interstate commerce in violation of the Commerce Clause of the United States Constitution;

2. Declare that Chapter 10-06.1 violates the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution;

3. Declare that Chapter 10-06.1 deprives Plaintiffs of the equal protection of the law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

4. Declare that the Attorney General, by virtue of fulfilling the duties of his office, is depriving Plaintiffs of their rights under the Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause in violation of 42 U.S.C. § 1983;

5. Enter an order permanently enjoining the Defendant from enforcing, or taking any steps to enforce, Chapter 10-06.1;

6. Award Plaintiffs their costs incurred in this action, including reasonable attorneys' fees, as permitted by 42 U.S.C. §§ 1983, and 1988; and

7. Grant Plaintiffs such additional and further relief as this Court deems just and proper.

Dated: June 2, 2016

DORSEY & WHITNEY LLP

*/s/ Sarah Andrews Herman*
Sarah Andrews Herman (ND 03399)
Claire Smith (ND 08430)
3203 32nd Avenue South, Suite 103
P.O. Box 1344
Fargo, ND 58107-1344
(701) 235-61000
herman.sarah@dorsey.com
smith.claire@dorsey.com

ATTORNEYS FOR PLAINTIFFS.