**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| North Dakota Farm Bureau, Inc., Galegher Farms, Inc., Brian Gerrits, Breeze Dairy Group, LLC, North Dakota Pork Council, and Bill Price, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| Wayne Stenehjem, in his official capacity as Attorney General of North Dakota, | ) ) ) |
| Defendant, | ) ) |
| Farmers' Educational and Cooperative Union of America North Dakota Division, d/b/a North Dakota Farmers Union, | ) ) ) ) |
| Intervenor-Defendant, | ) ) |
| Dakota Resource Council, a North Dakota Nonprofit Corporation, | ) ) ) |
| Intervenor-Defendant. | ) |

**ORDER ON MOTIONS**

Case No. 1:16-cv-137

Before the Court is Defendant North Dakota Attorney General Wayne Stenehjem's ("State") motion for partial summary judgment filed on June 21, 2017, and the Plaintiffs' motion for summary judgment filed on July 12, 2017. See Docket Nos. 64 and 71. Also before the Court is Defendant Dakota Resource Council's ("DRC") motion to strike filed on September 6, 2017, and Defendant Farmers' Educational and Cooperative Union of America North Dakota Division's ("Farmers Union") motion to dismiss and, in the alternative, motion for judgment on the pleadings filed on October 4, 2017. See Docket Nos. 93, 104, and 113. The motions have been fully briefed. See Docket Nos. 65, 72, 76, 78, 79, 80, 91, 92, 93-1, 95, 96, 100, 102, 105, 109, and 110. For the

1

reasons set forth below, the motions for summary judgment are granted in part and denied in part. The motion to strike, motion to dismiss, and motion for judgment on the pleadings are denied.

## I.    BACKGROUND

On June 2, 2016, the Plaintiffs initiated this declaratory judgment action challenging the constitutionality of Chapter 10-06.1 of the North Dakota Century Code.  See Docket No. 1.  The Plaintiffs filed an amended complaint on August 17, 2016.  See Docket No. 19.  On January 1, 2017, the Court entered an order allowing Farmers Union and the DRC to intervene as Defendants.  See Docket No. 56.

Chapter 10-06.1 is officially known as the Corporate or Limited Liability Company Farming law ("Corporate Farming Law").  The Corporate Farming Law was originally enacted in 1932 as an initiated measure.  See Stenehjem ex rel. State v. Nat'l Audubon Soc'y, Inc., 844 N.W.2d 892, 897 (N.D. 2014).  In its original form, the Corporate Farming Law prohibited corporations from owning farm or ranch land or engaging in the business of farming or agriculture.  Id.  Since 1932, the law has been amended a number of times and it now permits a number of exceptions to the general rule prohibiting corporate farming.  Chapter 10-06.1 "is rooted in the desire to preserve rural agricultural land for use by family farmers" by making unlawful, with some exceptions, corporate farming and corporate ownership of farms as well as farming and ownership of farms by limited liability companies.

The Plaintiffs specifically challenge N.D.C.C. § 10-06.1-12 ("the family farm exception") which provides an exception for family farms to the general ban on corporate farming if the shareholders or members do not exceed fifteen in number, are family members within a specified degree of kinship, and meet other specified requirements.  The family farm exception was added to

the Corporate Farming Law in 1981.  <u>See</u> <u>State v. J.P. Lamb Land Co.</u>, 401 N.W.2d 713, 715 (N.D. 1987).  The Plaintiffs contend the family farm exception is facially discriminatory and violates the Commerce Clause, the Privileges and Immunities Clause, and the Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983.  The Plaintiffs seek a declaration that the entirety of Chapter 10-06.1 is unconstitutional and an injunction prohibiting its enforcement.

The relevant provisions of Chapter 10-06.1 provide as follows:

> All corporations and limited liability companies, except as otherwise provided in this chapter, are prohibited from owning or leasing land used for farming or ranching and from engaging in the business of farming or ranching.  A corporation or a limited liability company may be a partner in a partnership that is in the business of farming or ranching only if that corporation or limited liability company complies with this chapter.

N.D.C.C. § 10-06.1-02.

> This chapter does not prohibit a **domestic** corporation or a **domestic** limited liability company from owning real estate and engaging in the business of farming or ranching, if the corporation meets all the requirements of chapter 10-19.1 or the limited liability company meets all the requirements of chapter 10-32.1 which are not inconsistent with this chapter.  The following requirements also apply:
>
> 1. If a corporation, the corporation must not have more than fifteen shareholders. If a limited liability company, the limited liability company must not have more than fifteen members.
>
> 2. Each shareholder or member must be related to each of the other shareholders or members within one of the following degrees of kinship or affinity: parent, son, daughter, stepson, stepdaughter, grandparent, grandson, granddaughter, brother, sister, uncle, aunt, nephew, niece, great-grandparent, great-grandchild, first cousin, or the spouse of a person so related.
>
> 3. Each shareholder or member must be an individual or one of the following:
>
>> a. A trust for the benefit of an individual or a class of individuals who are related to every shareholder of the corporation or member of the limited liability company within the degrees of kinship or affinity specified in this section.
>>
>> b. An estate of a decedent who was related to every shareholder of the

3

corporation or member of the limited liability company within the degrees of kinship or affinity specified in this section.

4. A trust or an estate may not be a shareholder or member if the beneficiaries of the trust or the estate together with the other shareholders or members are more than fifteen in number.

5. Each individual who is a shareholder or member must be a citizen of the United States or a permanent resident alien of the United States.

6. If a corporation, the officers and directors of the corporation must be shareholders who are **actively engaged in operating the farm or ranch** and at least one of the corporation's shareholders must be an individual **residing on or operating the farm or ranch**. If a limited liability company, the governors and managers of the limited liability company must be members who are **actively engaged in operating the farm or ranch** and at least one of its members must be an individual **residing on or operating the farm or ranch**.

7. An annual average of at least sixty-five percent of the gross income of the corporation or limited liability company over the previous five years, or for each year of its existence, if less than five years, must have been derived from farming or ranching operations.

8. The income of the corporation or limited liability company from nonfarm rent, nonfarm royalties, dividends, interest, and annuities cannot exceed twenty percent of the gross income of the corporation or limited liability company.

N.D.C.C. § 10-06.1-12 (emphasis added). The dispute between the parties largely centers on the meaning of the word "domestic" and the phrases "actively engaged in operating the farm or ranch" and "residing on or operating the farm or ranch" in Section 10-06.1-12.

Plaintiff North Dakota Farm Bureau ("Farm Bureau") is a non-profit corporation organized under the laws of North Dakota, with its principal place of business in Fargo, North Dakota. The Farm Bureau's voluntary membership consists of more than 26,000 farm, ranch, and rural families residing in North Dakota. The mission of the Farm Bureau is to advocate for agriculture and enhance the economic opportunities of its membership while promoting individual freedoms and self-reliance. The Farm Bureau contends the Corporate Farming Law interferes with its ability to

fulfill its organizational purpose and injures it members because the law prohibits farmers from utilizing beneficial business structures and limits the value of their farms and ranches.

Plaintiff Galegher Farms, Inc., is a farming corporation organized under the laws of North Dakota, with its principal place of business in Thompson, North Dakota. Galegher Farms leases approximately 3,100 acres of North Dakota farmland for crop farming purposes. The president and vice-president of Galegher Farms are first cousins and currently meet the kinship requirements of Chapter 10-06.1-12. However, the president's son and the vice-president's nephew have expressed interest in becoming shareholders in the corporation but cannot as they do not meet the kinship requirements of Section 10-06.1-12. Galegher Farms contends it is harmed by the Corporate Farming Law's kinship requirements.

Plaintiff Brian Gerrits is an individual who resides in De Pere, Wisconsin. Gerrits is a member of a Wisconsin limited liability company, Breeze Dairy Group, LLC, that engages in dairy farming in Wisconsin. Gerrits contends Chapter 10-06.1 prohibits him and Breeze Dairy from expanding into North Dakota which limits his ability to earn a living in his chosen occupation.

Plaintiff Breeze Dairy Group, LLC ("Breeze Dairy") is an LLC incorporated in the State of Wisconsin. Breeze Dairy was founded in 2003 in response to the changing farming economy. Breeze Dairy was formed in 2003 by five families who merged their dairy operations into a single limited liability company. Breeze Dairy contends it is not a "domestic" LLC as defined by North Dakota's Corporate Farming Law. For these reasons, Breeze Dairy contends it cannot expand into North Dakota and thus is harmed by Chapter 10-06.1.

Plaintiff North Dakota Pork Council ("Pork Council") is a non-profit corporation organized under the laws of North Dakota. The Pork Council promotes the interests of pork producers and provides them with educational resources and services which enhance profitability. The Pork

Council contends Chapter 10-06.1 interferes with its ability to fulfill its mission to help pork producers enhance profitably as it precludes them from utilizing beneficial business structures and limits the value of the pork production operations located within the state; causes them harm by limiting the number of pork producers in North Dakota, which in turn reduces its membership; and limits its members access to capital and thus limits the number of pork producers within North Dakota, which negatively impacts the Pork Council's membership.

Plaintiff Bill Price is an individual who resides in Center, North Dakota. Price is a farmer and rancher involved in multiple farming and ranching operations in North Dakota, including the Price Cattle Ranch which is organized as a limited liability partnership. Several of the operations in which Price is involved in have been unable to utilize the corporate business structure due to their inability to meet the requirements in Chapter 10-06.1, and they have also been unable to bring in capital through corporate investments. Price is the managing partner of Price Cattle Ranch. Price contends he would prefer to operate Price Cattle Ranch as a corporation or limited liability company but is prohibited by Chapter 10-06.1 from doing so. Price also contends the next generation of the Price family will not be able to continue the Price Cattle Ranch as they do not meet the kinship requirements of Section 10-06.1-12.

Defendant Wayne Stenehjem is the Attorney General for the State of North Dakota. As Attorney General, Stenehjem is charged with enforcing Chapter 10-06.1. The enforcement provisions include court-ordered divestment and civil penalties. See N.D.C.C. § 10-06.1-24.

Defendant Farmers Union is a non-profit organization founded in 1927 to provide assistance to farm families. Farmers Union is the largest general farm organization in North Dakota, with 45,500 member families. Farmers Union works to advance family farms and ranches and the quality of life for North Dakotans through member advocacy, educational programs, cooperative initiatives,

and insurance services. In the early 1930s, Farmers Union drafted the language for what would ultimately become North Dakota's Corporate Farming Law. Farmers Union has long been committed to preserving and has actively defended North Dakota's Corporate Farming Law which it sees as the foundation of family farms, rural communities, the State's agrarian heritage, and stewardship of natural resources.

Defendant DRC is a nonprofit organization formed in 1978 with the purpose of protecting North Dakota's rural communities, family farms, agricultural economy, soil, land, and water. The DRC consists of approximately 1,000 members, more than half of whom are farmers and ranchers

## II.    <u>LEGAL DISCUSSION</u>

### A.    <u>MOTION TO STRIKE</u>

The DRC moves to strike portions of the declarations of John L. Galegher, Jr. (Docket No. 81), Brian Gerrits (Docket. No. 82), Tamra Heins (Docket No. 84), and Bill Price (Docket No. 85) filed by the Plaintiffs in support of their motion for summary judgment. <u>See</u> Docket No. 93. The DRC contends the declarations do not comply with Rule 56(c) of the Federal Rules of Civil Procedure. The Plaintiffs maintain they have complied with the requirements of Rule 56(c).

Rule 56(c) requires that an affidavit or declaration used to support a summary judgment motion must be made upon personal knowledge and that the content of the affidavit consists of facts that would be admissible at trial. A careful review of the declarations to which the DRC has objected reveals the Plaintiffs have complied with the rule. In this case, the Court is faced with cross-motions for summary judgment in a declaratory judgment action challenging the constitutionality of a state law. The declarations in question relate to the issue of standing and whether the Plaintiffs have suffered an injury. In this context, the witnesses are competent to give

their lay opinions as to the impact of the Corporate Farming Law on themselves, their farming operations, their membership, and the organizations they operate. The Court would permit such testimony at trial. As such, the Court finds the DRC's contentions meritless and the motion is denied.

### B.   STANDING

The State contends the Plaintiffs lack standing to bring their Commerce Clause claim. Farmers Union contends the Plaintiffs lack standing to bring their claims for violation of the Commerce Clause (Count I), the Privileges and Immunities Clause (Count II), and the Equal Protection Clause (Count III) and 42 U.S.C. § 1983 (Count IV). The Plaintiffs concede their Privileges and Immunities Clause claim (Count II) should be dismissed as it is foreclosed by case law from the Eighth Circuit Court of Appeals. Upon careful review of the entire record, the Court concludes, for the reasons set forth below, that the Plaintiffs have standing.

Federal Rule of Criminal Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

A federal district court's diversity jurisdiction is limited to civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). It is well-established that diversity of citizenship is determined at the time the action is filed, and complete diversity among all parties is required under 28 U.S.C. § 1332 to invoke federal jurisdiction. Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc., 149 F.3d 794, 796 (8th Cir.

1998).  "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."  OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007).  An LLC's citizenship is the citizenship of each of its members.  Id.

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction.  Osborn, 918 F.2d at 729 n.6.  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Id. (internal citations omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Id. (internal citation omitted).  In this case, the facts are disputed, numerous affidavits have been submitted, and cross-motions for summary judgment are also pending.  Thus, the Court will treat the motion as a factual attack, consider material outside the pleadings, and not assume the facts asserted in the complaint are true in ruling on the motion.  See Branson Label, Inc. v. City of Branson, 793 F.3d 910, 915 (8th Cir. 2015).

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies."  U.S. Const. art. III, § 2.  This jurisdictional limitation requires every plaintiff to demonstrate it has standing when bringing an action in federal court.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  Warth v. Seldin, 422 U.S. 490, 518 (1975).  The essence of standing is whether the party invoking federal jurisdiction is entitled to have the court decide the merits of the dispute.  Id. at 498.  The three elements which constitute the "irreducible constitutional minimum of standing" are injury in fact, causation, and redressability.  Lujan, 504 U.S. at 560-61.

It is important to note that an inquiry into standing is not a review of the merits of the plaintiff's claims. Oti Kaga, Inc. v. S.D. Hous. Dev. Auth., 342 F.3d 871, 878 (8th Cir. 2003). At the summary judgment stage all material facts alleged must be accepted as true as long as they are capable of proof at trial. Id. The burden is on the party responding to a summary judgment motion to present some evidence creating an issue of material fact on the issues of injury, causation, and redressability. Id. Generalized allegations of injury resulting from the defendant's conduct will suffice to establish standing at the pleading stage. See Lujan, 504 U.S. at 561; Constitution Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011).

A plaintiff's standing is distinct from the merits of the plaintiff's cause of action. Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency, 836 F.3d 963, 968 (8th Cir. 2016). Where there are multiple plaintiffs and multiple claims, at least one plaintiff must demonstrate standing for each claim and each form of relief being sought. Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650-51 (2017). If a plaintiff lacks Article III standing, a federal court has no subject-matter jurisdiction over the claim and the court must dismiss the action. Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1128 (8th Cir. 2016).

### 1.    COUNT I – DORMANT COMMERCE CLAUSE

The Defendants contend the Plaintiffs do not have standing to bring a dormant Commerce Clause claim because they have failed to introduce admissible evidence sufficient to establish that any Plaintiff has suffered an "actual or imminent" injury that is causally connected to any state action. The Plaintiffs contend otherwise. The Court concludes the Plaintiffs, much like the plaintiffs in *Hazeltine* and *Jones*, have standing because the Corporate Farming Law has a direct negative impact on their ability to raise out-of-state capital, earn income, increase farm values, and

utilize preferred business structures.  See S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 592 (8th Cir. 2003) (finding plaintiffs who expected an imminent loss of business had standing to challenge South Dakota's ban on corporate farming); Jones v. Gale, 470 F.3d 1261, 1267 (8th Cir. 2006) (finding plaintiffs had standing to challenge a Nebraska ban on corporate farming because the law had a direct negative effect on their ability to earn income, borrow money, and optimize financial planning decisions).

This case involves six plaintiffs.  The Plaintiffs meet the Article III standing requirement if any one of them has standing to sue.  N.D. v. Heydinger, 825 F.3d 912, 917 (8th Cir. 2016).  When a state statute is alleged to violate the dormant Commerce Clause, plaintiffs have standing if the law "has a direct negative effect on their borrowing power, financial strength, and fiscal planning." Jones, 470 F.3d at 1267; Heydinger, 825 F.3d at 917.  An injury can be actual or threatened.  Keller v. City of Fremont, 719 F.3d 931, 947 (8th Cir. 2013).  Plaintiffs have standing to challenge the facial validity of a law when they allege an "actual, well-founded fear the law will be enforced against them." Id.  It is undisputed the State regularly enforces the Corporate Farming Law.  As the declarations of Gerrits, Price, and Galegher demonstrate, the Plaintiffs have a reasonable belief, based upon the plain text of the statute, that the Corporate Farming Law will be enforced against them to their economic detriment.  See Docket Nos. 81, 82, and 85.  Thus, they have standing to assert a facial challenge to the constitutionality of the law.

Plaintiff Breeze Dairy Group is a Wisconsin LLC, and its chief executive officer is Brian Gerrits.  Gerrits asserts in his declaration that Breeze Dairy would like to expand its dairy operations into North Dakota but cannot do so based on the plain language of the Corporate Farming Law which permits only "domestic" entities from farming in North Dakota.  The Corporate Farming Law also requires at least one member or shareholder to "reside on or operate the farm or ranch."  Breeze

Dairy and Gerrits contend these restrictions prevent Breeze Dairy from expanding its farming operations into North Dakota, thus causing them economic harm.

Plaintiff Bill Price is a fourth generation North Dakota farmer and rancher. He has been engaged in multiple farming, ranching, and consulting operations in North Dakota over the last 25+ years. One such operation is the Price Cattle Ranch, a limited liability partnership. Price would like to bring out-of-state capital into his operations through corporate investments, but contends he is prohibited from doing so by the Corporate Farming Law. Price contends this prohibition causes him economic harm.

Plaintiff Galegher Farms, Inc. is a North Dakota corporation established in 1986. John Galegher, Jr., is the president and owner of Galegher Farms. It leases approximately 3,100 acres of North Dakota farmland for crop farming purposes. Galegher Farms would like to access out-of-state capital through corporate investment in order to fund its operations but is prohibited from doing so by the Corporate Farming Law. This prohibition increases the cost of capital investments and thus harms Galegher Farms economically.

These injuries to Gerrits, Breeze Dairy, Price, and Galegher are comparable to the economic harms suffered by the plaintiffs in *Jones* and *Hazeltine*. See Jones, 470 F.3d at 1267; Hazeltine, 340 F.3d at 592. A negative effect on borrowing power or denial of business opportunity constitute sufficient injury for Article III standing purposes. Hazeltine, 340 F.3d at 592. The Plaintiffs in this case have shown such an injury.

Contrary to the suggestion of the Defendants, the Plaintiffs here, who raise a facial challenge to the Corporate Farming Law, are not required to show they applied for and were denied certificates to farm in North Dakota in order to demonstrate an injury. It is not necessary for a plaintiff to show that he had contracted with an out-of-state company in order to show the injury necessary for

standing to exist.  Jones, 470 F.3d at 1267.  This is because "'plaintiffs have standing to challenge the facial validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit, where the impact of the regulation is direct and immediate and they allege an actual, well-founded fear that the law will be enforced against them.'"  Keller, 719 F.3d at 947 (quoting Gray v. City of Valley Park, 567 F.3d 976, 984 (8th Cir.2009)).  The Plaintiffs' fears that the Corporate Farming Law will be enforced against them are well-supported by the plain language of the law and reinforced by the undisputed fact that the North Dakota Attorney General regularly enforces the law which provides for civil penalties and court-ordered divestment as remedies for violation of the law.  See Heydinger, 825 F.3d at 917; see also  Stenehjem ex rel. State v. Nat'l Audubon Soc'y, Inc., No. 47-2009-C-425 (Stutsman County Dist. Ct. Dec. 12, 2011) ("NAS I"); Stenehjem ex rel. State v. Crosslands, Inc., No. 20-05-C-002 (Griggs County Dist. Ct. June 5, 2009) ("Crosslands I ").  The Defendants' contention that the Plaintiffs have misinterpreted the Corporate Farming Law is unpersuasive as such an argument goes to the merits of the Plaintiffs' claims; such an examination being impermissible when assessing standing.  Warth, 422 U.S. at 500 ("standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal").

The Court finds the Plaintiffs have established, for purposes of standing, an actual and well-founded fear, supported by admissible evidence, that the Corporate Farming Law may be enforced against them.  Having determined that a concrete and imminent injury has been shown, there can be no question that the injury has been caused by state action which can be redressed by a favorable ruling and a properly tailored injunction.  Jones, 470 F.3d at 1267; Keller, 719 F.3d at 947-48 (noting that when state action is subject to a facial challenge by a plaintiff who is a target or object of that action there is usually little question that the action has caused the plaintiff injury, and that a judgment and injunction preventing the action will redress it).

## 2.     COUNT III – EQUAL PROTECTION CLAUSE

Farmers Union contends in its motion to dismiss that the Plaintiffs do not have standing to pursue an Equal Protection challenge to Chapter 10-06.1 because they have not suffered any concrete harm.  The Plaintiffs allege in the amended complaint that Chapter 10-06.1 allows some North Dakota corporations and LLCs the opportunity to own farm land or ranch land in North Dakota while denying the same opportunities to out-of-state entities.  Specifically, Plaintiffs contend Section 10-06.1-12 creates exceptions to the general prohibition on owning farmland and ranchland for only domestic corporations and domestic limited liability companies, thereby treating them differently than it does foreign corporations and foreign limited liability companies.  See Docket No. 19, ¶ 113.

The basic underlying principle of the Equal Protection Clause requires "the government to treat similarly situated people alike."  Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). As the Plaintiffs read Section 10-06.1-12, the family farm exception violates the simple command of the Equal Protection Clause, by treating corporations and limited liability companies interested or engaged in the business of farming and ranching differently based on where they are incorporated or organized.  While the Defendants disagree with this reading of the family farm exception, it is certainly reasonable, and standing in no way depends on the merits of a plaintiff's claim or contention that particular conduct is prohibited by law.  Warth, 422 U.S. at 500.  The Plaintiffs have alleged they are harmed by the family farm exception as they are not "domestic" entities and thus are unable to take advantage of it, and it limits their access to out-of-state capital.  These allegations are supported by declarations (see Docket Nos. 81, 82, 83, 85, and 97) setting forth specific facts which the Court must accept as true for purposes of determining standing.  Lujan, 504 U.S. at 561. For instance, Breeze Dairy is a Wisconsin LLC and thus not a "domestic" LLC as the Plaintiffs read

14

Section 10-06.1-12. Any member of the Farm Bureau or Pork Council seeking to take advantage of the family farm exception through the use of a "foreign" corporation or LLC would be unable to do so, while this would not be the case for "domestic" entities. The Court concludes that the Plaintiffs have adequately alleged how Chapter 10-06.1 injures them by treating them differently than it does domestic corporations and LLCs and individuals seeking to establish entities to own farmland or ranchland in North Dakota. Therefore, the Plaintiffs have standing to pursue an Equal Protection challenge.

### 3. COUNT IV – 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right, privilege, or immunity secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law, regulation, or ordinance. Neighborhood Enterprises, Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008). Section 1983 does not itself create substantive rights or confer standing, but rather provides a remedy for the deprivations of rights established elsewhere. Tarsney v. O'Keefe, 225 F.3d 929, 939 (8th Cir. 2000). "Standing must be established on another basis before a section 1983 claim can proceed." Id. In other words, a plaintiff who challenges the constitutionality of a state statute using Section 1983 must establish only the traditional elements of Article III standing for the underlying claim as there are no "Section 1983-specific" standing requirements. See Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392 (1988) (finding standing to bring a claim under Section 1983 existed because "the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution"). Because the Plaintiffs have demonstrated they have standing to pursue their dormant

Commerce Clause and Equal Protection claims, they also have standing to pursue relief under 42 U.S.C. § 1983. As North Dakota Attorney General Wayne Stenehjem is the state official charged with enforcing Chapter 10-06.1, it was entirely appropriate to name him as a defendant in his official capacity. Farmers Union's arguments to the contrary go to the merits of a Section 1983 claim rather than the standing issue and are unpersuasive.

### C.     JUDGMENT ON THE PLEADINGS

In the alternative to its standing argument, Farmers Union contends the amended complaint mischaracterizes and inaccurately describes the requirements of the Corporate Farming Law such that judgment on the pleadings is warranted. The Plaintiffs maintain these alleged mischaracterizations are simply their substantive position as to the proper interpretation and application of Chapter 10-06.1. The Court agrees that these interpretive disagreements are not mischaracterizations that would justify judgment on the pleadings. Rather, such disputes go to the heart of the case and will be resolved below in relation to the summary judgment motions. Accordingly, Farmers Union's motion for judgment on the pleadings is denied.

### D.     DORMANT COMMERCE CLAUSE

The State and the Plaintiffs have both moved for summary judgment on the Plaintiffs' dormant Commerce Clause claim. Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case

16

under the applicable substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict

for the non-moving party.  <u>Id.</u>

The Court must inquire whether the evidence presents a sufficient disagreement to require

the submission of the case to a jury or whether the evidence is so one-sided that one party must

prevail as a matter of law.  <u>Diesel Mach., Inc. v. B.R. Lee Indus., Inc.</u>, 418 F.3d 820, 832 (8th Cir.

2005).  The moving party bears the responsibility of informing the court of the basis for the motion

and identifying the portions of the record which demonstrate the absence of a genuine issue of

material fact.  <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-

moving party may not rely merely on allegations or denials in its own pleading; rather, its response

must set out specific facts showing a genuine issue for trial.  <u>Id.</u>; Fed. R. Civ. P. 56(c)(1).  The court

must consider the substantive standard of proof when ruling on a motion for summary judgment.

<u>Anderson</u>, 477 U.S. at 252.

The Plaintiffs' dormant Commerce Clause contentions are two-fold.  First, the Plaintiffs

maintain that Section 10-06.1-12 of the Corporate Farming Law, known as the family farm

exception, prohibits out-of-state individuals and corporations from engaging in farming or ranching

in North Dakota.  <u>See</u> Docket No. 19, ¶¶ 36, 51, 57, and 70.  Second, the Plaintiffs contend the

family farm exception prevents North Dakota farmers from utilizing outside capital in their

operations, or entering into business relationships with out-of-state corporations. <u>See</u> Docket No.

19, ¶¶ 36, 70, 71, and 78.  Specifically, the Plaintiffs object to the phrases "domestic corporation"

or "domestic limited liability company" and "actively engaged in operating the farm or ranch" and

"residing on or operating the farm or ranch" found in the language of the family farm exception.

The Commerce Clause grants to Congress the power "[t]o regulate Commerce . . . among

the several States." U.S. Const. Art. I, § 8. The Commerce Clause has long been understood to have a "negative or dormant implication." S. Union Co. v. Mo. Public Serv. Comm'n, 289 F.3d 503, 507 (8th Cir. 2002). The dormant Commerce Clause prohibits states from "enact[ing] laws that discriminate against or unduly burden interstate commerce." Hazeltine, 340 F.3d at 592. The purpose of the dormant Commerce Clause is to prevent states from promulgating protectionist policies which would inhibit free trade among the states. Id. The Commerce Clause "reflect[s] a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." Hughes v. Okla., 441 U.S. 322, 325 (1979).

When a state law is challenged on dormant Commerce Clause grounds it is subject to a two-tiered analysis. Hazeltine, 340 F.3d at 593. The first tier analysis requires the court to determine whether the law discriminates against interstate commerce. Jones, 470 F.3d at 1267. "Discrimination in this context means the 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the later.'" Hazeltine, 340 F.3d at 593 (quoting Or. Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994)). A law can discriminate in three ways: 1) it can discriminate on its face; 2) it can have a discriminatory purpose; or 3) it can have a discriminatory effect. Jones, 470 F.3d at 1267; Hazeltine, 340 F.3d at 593. If a state law is determined to be discriminatory, it is *per se* invalid unless the state can show, under rigorous scrutiny, that it has no other means to advance the legitimate state interest. Jones, 470 F.3d at 1270; Hazeltine, 340 F.3d at 593. If a law is found non-discriminatory under a first tier analysis, the second tier analysis, otherwise known as the *Pike* balancing test, provides the law will be found unconstitutional "if the burden it imposes on interstate commerce 'is clearly excessive in relation

18

to its putative local benefits.'"  <u>Hazeltine</u>, 340 F.3d at 593 (quoting <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970)).

1.      **FACIAL DISCRIMINATION**

The Court will first address whether the Corporate Farming Law discriminates on its face. In order to do that, the Court must address the two clauses in the family farm exception which the Plaintiffs contend violate the dormant Commerce Clause.

a.      **Domestic Corporation**

The disputed portion of Section 10-06.1-12 which references "domestic corporation" and "domestic limited liability company" provides as follows:

> This chapter does not prohibit a **domestic corporation** or a **domestic limited liability company** from owning real estate and engaging in the business of farming or ranching, if the corporation meets all the requirements of chapter 10-19.1 or the limited liability company meets all the requirements of chapter 10-32.1 which are not inconsistent with this chapter.

N.D.C.C. § 10-06.1-12 (emphasis added).  The Corporate Farming Law does not define "domestic corporation" or "domestic limited liability company" but it does incorporate North Dakota's Business Corporation Act (N.D.C.C. ch. 10-19.1) and North Dakota's Limited Liability Company Act (N.D.C.C. ch. 10-32.1).  <u>See</u> N.D.C.C. §§ 10-06.1-13 and 10-06.1-14.  These Acts are fully applicable to the family farm exception, "except when inconsistent with the intent of this chapter" and thus the Court will look to them for definitions.  <u>Id.</u>

Chapter 10-19.1 (the Business Corporation Act) defines "domestic corporation" as "a corporation, other than a foreign corporation, organized for profit and incorporated under or governed by this chapter."  N.D.C.C. § 10-19.1-01(16).  It defines the term "foreign corporation," as "a corporation organized for profit which is incorporated under laws other than the laws of this state for a purpose for which a corporation may be incorporated under this chapter."  N.D.C.C. §

19

10-19.01(26).  It defines "domestic limited liability company" as "a limited liability company, other than a foreign limited liability company, organized under or governed by chapter 10-32.1." N.D.C.C. § 10.19.1-01(34).  It defines  the term "foreign limited liability company," as "a limited liability company organized under laws other than the laws of this state for a purpose for which a limited liability company may be organized under chapter 10-32.1."  N.D.C.C. § 10-19.01(27).

Chapter 10-32.1 (the North Dakota LLC Act) defines "domestic corporation" as "a corporation, other than a foreign corporation, organized for profit and incorporated under chapter 10-19.1."  N.D.C.C. § 10-32.1-02(9).  It defines "domestic limited liability company" as "a limited liability company, other than a foreign limited liability company, organized under or governed by this chapter excluding a nonprofit limited liability company organized under or governed by chapter 10-36."  N.D.C.C. § 10-32.1-02(28).  It defines the terms "foreign corporation" and "foreign limited liability company," virtually identically to the North Dakota Business Corporation Act.  N.D.C.C. §§ 10-32.1-02(20) and (21).

From the plain language of these definitions, it is clear that the family farm exception requires the entity to be a North Dakota corporation or a limited liability company in order for the exception to apply.  The Court finds that such a requirement would clearly discriminate against out-of-state interests in violation of the dormant Commerce Clause under current Eighth Circuit case law.  See Jones, 470 F.3d at 1267 (stating differential treatment of in-state and out-of-state entities that benefits the former while burdening the latter violates the dormant Commerce Clause).

However, the Defendants maintain this interpretation of the term "domestic" is incorrect. The Defendants contend the word "domestic" means "within the United States."  This position is taken by the North Dakota Attorney General, a position which effectively ignores the plain language of the statute and the laws it incorporates.  The Defendants maintain this interpretation is permissible

20

because the term "domestic" is ambiguous.  The Defendants contend the meaning they afford the term "domestic" is supported by the legislative history, a state district court opinion, and is reasonable because it avoids constitutional infirmity.  The Court finds that the Defendants' interpretation of the word "domestic" is unreasonable and clearly contrary to the plain language of the Corporate Farming Law and the state laws it incorporates.

Because the North Dakota Attorney General's interpretation is inconsistent with the clear and unambiguous statutory language, that interpretation need not be given deference.  Delorme v. N.D. Dep't of Human Servs., 492 N.W.2d 585, 587-88 (N.D. 1992) (noting agency interpretation of statutory language should be given deference if the statutory language is ambiguous but not if the statutory language is clear, plain, and unambiguous).  A statute is ambiguous if it is susceptible to "differing but rational meanings." Id. at 588.  Statutory language must be given its most natural and obvious meaning.  Jones, 470 F.3d at 1268; Little v. Tracy, 497 N.W.2d 700, 705 (N.D. 1993) (noting that when the wording of a statute is unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit").

In this case, the terms "domestic corporation" and "domestic limited liability company" are expressly defined in Chapters 10-19.1 and 10-32.1 to mean a corporation or limited liability company created under the laws of North Dakota.  N.D.C.C. §§ 10-19.1-01(16), (26), (27), and (34) and N.D.C.C. §§ 10-32.1-02(9), (20), (21), and (28).  By incorporating the requirements of Chapters 10-19.1 and 10-32.1, the Corporate Farming Law necessarily adopts those Chapters' definitions of "domestic corporation" and "domestic limited liability company." See N.D.C.C. §§ 10-06.1.13 and 10-06.1-14.  The household dictionary definitions provided by the Defendants are unpersuasive when the statute and the laws it incorporates define the terms in question.  In addition, Black's Law Dictionary defines a "domestic corporation" as one "organized and chartered under the laws of a

state" while a "foreign corporation" is one "organized and chartered under the laws of another state." Black's Law Dictionary (9th ed. 2009). The Black's Law Dictionary's definitions are consistent with the statutory definitions provided for under North Dakota law.

As for the decision of the North Dakota state district court in *NAS I*, giving the term "domestic" the broad definition proposed by the State, the Court finds it unpersuasive. The state district court offered scant analysis in support of its conclusion and simply found the State's argument persuasive and supported by the legislative history. The lack of analysis renders the opinion unhelpful. The apparent reliance on legislative history misses the mark as well. It is improper to resort to legislative history when the statute itself is plainly unambiguous. See Olson v. Job Serv. N.D., 827 N.W.2d 36, 40 (N.D. 2013) (noting that if the language of a statute is unambiguous, "legislative intent is presumed clear from the face of the statute"); Olson v. Fairview Health Servs. of Minn., 831 F.3d 1063, 1071 (8th Cir. 2016) (noting legislative history should only be consulted when a statute contains textual ambiguity).

While the broad meaning of the term "domestic" offered by the State is understandable from the standpoint of avoiding a dormant Commerce Clause violation, accepting the State's construction would render the Corporate Farming Law's incorporation of Chapters 10-19.1 and 10-32.1 meaningless. Because the Court can find no ambiguity in the term "domestic" as used in Section 10-06.1-12, and because when the term "domestic" is given its plain and ordinary meaning it gives preference to North Dakota entities, the Court finds this provision of the Corporate Farming Law clearly violates the dormant Commerce Clause.

### b.　　Operational Requirements

Section 10-06.1-12(6), provides as follows:

> If a corporation, the officers and directors of the corporation must be shareholders who are **actively engaged in operating the farm or ranch** and at least one of the corporation's shareholders must be an individual **residing on or operating the farm or ranch**. If a limited liability company, the governors and managers of the limited liability company must be members who are **actively engaged in operating the farm or ranch** and at least one of its members must be an individual **residing on or operating the farm or ranch**.

N.D.C.C. § 10-06.1-12(6) (emphasis added). The Plaintiffs contend the emphasized language ("operational requirements") amounts to a requirement that at least one member or shareholder reside on the farm and such a requirement violates the dormant Commerce Clause. See Jones, 470 F.3d at 1268 (finding the requirement of Nebraska law that at least one family member reside on or engage in the daily labor or management of the farm violated the dormant Commerce Clause as it favored Nebraska residents). A requirement that someone reside on or work on the farm clearly violates the dormant Commerce Clause. Id. Neither of the operational requirements are defined by the Corporate Farming Law.

The Defendants maintain North Dakota's family farm exception does not contain a day-to-day labor requirement, and it is not necessary for any shareholder to reside on the farm. Specifically, they contend the family farm exception's first requirement that a shareholder be "actively engaged in operating the farm or ranch" can be met by a shareholder performing management activities off-site. The Defendants argue the second requirement that at least one shareholder be "residing on or operating the farm or ranch" can also be satisfied by either residing on the farm or making operational decisions from afar and without a physical presence on the farm. The argument as to both requirements is essentially the same, namely the farm may be managed or operated from a distance or remotely without requiring a physical presence on the farm. For

example, a non-resident shareholder living off the farm and outside North Dakota may operate a North Dakota family farm through management decisions made by that individual and the actual planting, harvesting, and other operations may be contracted out to independent entities which perform custom agriculture services.

The dispute over the operational requirements essentially comes down to whether a physical presence in North Dakota is required to satisfy the statutory language. The Plaintiffs contend a physical presence is required while the Defendants contend no physical presence is required and management from a distance is acceptable. It is undisputed that if the Plaintiffs are correct, the dormant Commerce Clause is violated. Both parties have asserted reasonable interpretations of the statutory language which is not defined by the law itself.

The Defendants point to North Dakota Attorney General Opinion 82-25 (April 12, 1982) ("NDAG 82-25"), *NAS I*, and *Crosslands I* to support their interpretation of the operational requirements as not requiring a physical presence in North Dakota. See Docket Nos. 67-10, 67-11, and 67-12. The Plaintiffs contend that making management decisions from afar is a passive activity which does not satisfy the family farm exception's requirement of being actively engaged in the operation of the farm or ranch. See Bornhorst v. Budzik, No. C8-90-393, 1990 WL 119348 (Minn. Ct. App. Aug. 21, 1990) (unpublished) (concluding the plaintiffs were not actively engaged in farming under Minnesota law because they were simply investors who did not participate in the planting, cultivating, or harvesting of crops); Rengstorf v. Richards, 417 N.W.2d 138 (Minn. Ct. App. 1987) (finding the defendant was actively engaged in farming under Minnesota law because he harvested some hay himself; 7 C.F.R. § 1400.201 (discussing the meaning of actively engaged in farming under Department of Agriculture regulations as including "active personal labor" or "active personal management"). The Plaintiffs also point to the legislative history to support their

interpretation.

In 1982, just a year after the family farm exception was enacted, the North Dakota Attorney General issued an opinion regarding the family farm exception that "a natural person who does not reside upon a farm or ranch, but manages the farming or ranching operation through employees, may incorporate that farm or ranch." <u>See</u> Docket No. 67-12. The Attorney General explained that the operational requirements encompass those physically doing daily work "as well those persons who make management decisions or who hire others to perform the physical labor needed in the operation of the farm or ranch." <u>See</u> Docket No. 67-12. In North Dakota, an Attorney General's opinion, while not binding on North Dakota courts, has "important bearing on the construction and interpretation of a statue." <u>Hughes v. State Farm Mut. Auto. Ins. Co.</u>, 236 N.W.2d 870, 876 (N.D. 1975). An Attorney General's opinion which gives contemporaneous construction to a statute is entitled to "special consideration." <u>See</u> <u>Johnson v. Wells Cty. Water Res. Bd.</u>, 410 N.W.2d 525, 529 (N.D. 1987); <u>Hilton v. N.D. Educ. Ass'n</u>, 655 N.W.2d 60, 65 (N.D. 2002).

The North Dakota Legislative Assembly has not expressed disagreement with NDAG 82-25 since the opinion was issued over three decades ago. Such legislative acquiescence over time affords an Attorney General's opinion greater weight. <u>N.D. Fair Hous. Council, Inc. v. Peterson</u>, 625 N.W.2d 551, 563 (N.D. 2001); <u>see</u> <u>also</u> <u>Hilton</u>, 655 N.W.2d at 65 (noting additional weight is due "an attorney general's opinion implicitly approved by the Legislature"). Since the Attorney General's opinion was issued in 1982, state agencies have relied upon NDAG 82-25 in implementing and enforcing the Corporate Farming Law. Because NDAG 82-25 was issued contemporaneously with the enactment of the family farm exception and has been impliedly approved by the North Dakota Legislature's inaction, the Court will afford it considerable weight in assessing the meaning of the operational requirements in Section 10-06.1-12(6).

The family farm exception's operational requirements have twice been reviewed in state district court in *NAS I* and *Crosslands I*. On both occasions, the state district court analyzed the family farm exception and found the operational requirements did not require a physical presence in North Dakota. See Docket Nos. 67-10 and 67-11. In 2009, the state district court in *Crosslands I* reviewed the family farm exception within Chapter 10-06.1, considered its text, applied principles of statutory construction, analyzed the applicable evidence, and concluded that the family farm exception "does not require persons to reside on the farm as long as there is an actively engaged person operating the farm or ranch." See Docket No. 67-11, p. 29. The state district court consequently concluded that the operational requirements in the family farm exception did not violate the dormant Commerce Clause. See Docket No. 67-11, p. 32. In 2011, the state district court in *NAS I* reviewed the family farm exception within Chapter 10-06.1, considered its text, applied principles of statutory construction, analyzed the applicable evidence, and concluded that the family farm exception "does not require a daily physical presence or daily labor to satisfy the 'actively engaged' or 'operating' requirements." See Docket No. 67-10, p. 28. The state district court further concluded that the family farm exception "does not favor North Dakota residents in close enough proximity that a daily commute is economically and physically possible." See Docket No. 67-10, p. 29. Both *NAS I* and *Crosslands I* offer reasoned analysis of the operational requirements and lend support to the interpretation offered by the Defendants.

The Plaintiffs argue the legislative history supports their contention that the family farm exception's operational requirements demand an actual physical presence on the farm or ranch. Specifically, the Plaintiffs rely upon exchanges between Allen Hoberg, Staff Council for the Legislative Council, and Senators Dotzenrod, Barth, Wright, and Sorum during a hearing on a 1979 bill (SB 2280). The 1979 bill, which was passed by the Legislature but vetoed by Governor Link,

was similar to the 1981 bill (SB 2233) which forms the core of the current version of the Corporate Farming Law.  See Ross H. Espeseth, North Dakota's Corporate Farming Statute: An Analysis of the Recent Change in the Law, 58 N.D. L. Rev. 283, 287 n. 38 (1982).  During this exchange, Senator Dotzenrod stated that "there is nothing in this bill that states that an outside corporation with the qualifications of this bill couldn't come into North Dakota and buy land."  See Docket No. 67-7, p. 4.  Hoberg responded that "the provision in the bill states they must be 'natural' persons and must be related and actively engaged in farming in North Dakota."  See Docket No. 67-7, p. 4.  Senator Barth wanted it clarified that "in order to be an officer or director of the corporation, they must be actively engaged in farming or ranching" and Hoberg concurred.  See Docket No. 67-7, p. 4.  Senator Wright expressed concern about "outside corporations coming in to buy farm land."  See Docket No. 67-7, p. 16.  Senator Sorum "stated the term 'actively engaged' concerns him as it has no restrictions on it and felt it should be defined."  See Docket No. 67-7, p. 16.

The Court finds these brief exchanges less than helpful in defining the operational requirements and shedding light on the question of whether an actual physical presence on the farm is required.  No mention of defining the operational requirements is made.  Indeed, Senator Sorum expressed a desire to define "actively engaged" but no definition was ever added to the bill and no discussion was held as to what a definition should entail.  Further, while the 1979 bill may have been similar to the 1981 bill, the 1979 bill never became law and is not the focus of this lawsuit.

To support their interpretation, the Plaintiffs also rely on a discussion between several members of the Senate Agricultural Committee on the 1981 bill.  The discussion is as follows:

> Senator Dotzenrod proposed an amendment for page 3, new subsection 10, which would say, "Each shareholder or member of the corporation must be actively engaged in operating the farm or ranch". (sic)  Senator Sorum suggested instead that it read "the major shareholder be actively engaged in farming"; (sic)  Senator Albers indicated that this might eliminate the small farmer and encourage large farms to

27

incorporate only. In the case of off farm heirs: If one decided to sell their stock or share of the land, they could only sell to those who are actively engaged in farming the land, giving these people control of the destiny of the corporation.

See Docket No. 67-9, p. 5. While this discussion referenced the operational requirements several times, there was no mention of a physical presence on the farm being necessary. It would seem the discussion centered on whether some or all of the shareholders must be actively engaged in operating the farm and not on whether being actively engaged in operating the farm required a physical presence on the farm. The Court finds the discussion of little assistance.

The Plaintiffs' citation to comments made by James Marsden, then director of public affairs for the Farm Bureau, regarding the 1979 bill also unavailing. While statements from lawmakers are helpful in determining legislative intent, the Court gives scant weight to comments from witnesses such as Marsden, as statements from non-lawmakers are of little help in determining legislative intent. See Jones, 470 F.3d at 1269 (noting statement by lawmakers may evidence a discriminatory purpose).

The Plaintiffs' reliance on Minnesota case law is equally unpersuasive as it bears virtually no relation to North Dakota's Corporate Farming Law, NDAG 82-25, *NAS I*, and *Crosslands I.* In addition, the provision of Minnesota law in question in *Rengstorf* and *Bornhorst* has been subject to varying interpretations. See Fed. Land Bank of St. Paul v. Wessels, No. C7-88-2233, 1989 WL 38400 (Minn. Ct. App. Apr. 25, 1989) (unpublished) (noting a farmer residing in nursing home is actively engaged in operating the family farm if he is still part of the family operation of the farm, and the farmer's daughter is actively engaged in operating that same family farm if she is actively involved in financial or other aspects of the farming operation that do not require her physical presence in the state).

Further, the Plaintiffs' reliance on federal regulations is also unpersuasive. The cited federal

regulation defines eligibility for farm program payments.  See 7 C.F.R. § 1400.201(b).  The regulation acknowledges active personal management alone can meet the requirement of being "actively engaged" in farming.  Id.  "Actively engaged in farming" means, in part, "active personal labor or active personal management, or a combination of active personal labor and active personal management."  Id.  Active personal management is defined as personally providing and participating in:

> (1) The <u>general supervision</u> and direction of activities and labor involved in the farming operation; or
>
> (2) <u>Services (whether performed on-site or off-site)</u> reasonably related and necessary to the farming operation, including:
>
> (i) <u>Supervision</u> of activities necessary in the farming operation, including activities involved in land preparation, planting, cultivating, harvesting, and marketing of agricultural commodities, as well as activities required to establish and maintain conserving cover crops on CRP acreage and activities required in livestock operations;
>
> (ii) Business-related actions, which include discretionary decision making;
>
> (iii) Evaluation of the financial condition and needs of the farming operation;
>
> (iv) Assistance in the structuring or preparation of financial reports or analyses for the farming operation;
>
> (v) <u>Consultations</u> in or structuring of business-related financing arrangements for the farming operation;
>
> (vi) <u>Marketing</u> and promotion of agricultural commodities produced by the farming operation;
>
> (vii) Acquiring technical information used in the farming operation; and
>
> (viii) <u>Any other management function</u> reasonably necessary to conduct the farming operation and for which service the farming operation would ordinarily be charged a fee.

7 C.F.R. § 1400.3 (emphasis added).  These activities do not have a physical presence requirement

and would tend to support the position of the Defendants more so than the position of the Plaintiffs. Specifically, this definition acknowledges that management may be performed off-site and still meet the definition of "actively engaged in farming." Mud on the boots is not required.

Unlike North Dakota's family farm exception, both the Nebraska and South Dakota laws at issue in *Jones* and *Hazeltine* included explicit language requiring a physical presence on the farm. Jones, 470 F.3d at 1265 and 1268 (citing Neb. Const. art. XII, § 8); Hazeltine, 340 F.3d at 587-88 (citing S.D. Const. art. XVII, § 22, cl. 1). The Nebraska provision defined a family farm or ranch corporation as engaged in farming and made up of family members "at least one of whom is a person residing on or actively engaged in the day to day labor and management of the farm or ranch." Jones, 470 F.3d at 1265 (emphasis added). The South Dakota law required that "[d]ay-to-day labor and management shall require both daily or routine substantial physical exertion and administration." Hazeltine, 340 F.3d at 587-88 (emphasis added). All North Dakota law requires is that the officers and shareholders be "actively engaged in operating the farm or ranch" and one member be a person "residing on or operating the farm or ranch." N.D.C.C. § 10-06.1-12(6) (emphasis added). As the Court has explained, these operational requirements do not include day-to-day labor or an actual physical presence on the farm. The North Dakota Attorney General has reached the very same conclusion which has withstood the test of time since 1982.

Based on a careful review of the record, the Court finds NDAG 82-25, combined with the state district court opinions in *NAS I* and *Crosslands I,* to be persuasive. North Dakota's operational requirements do not require a physical presence on the farm or in North Dakota. In this way, the requirements differ substantially from the laws at issue in *Jones* and *Hazeltine.* The acknowledgment that to be actively engaged in the operation of a farm does not necessarily require a physical presence on the farm is especially relevant in the modern internet age we now live in.

The availability of the internet and everything that goes along with it, including video-conferencing and drone technology, makes the world a much smaller place. The Plaintiffs' contention in this regard is somewhat antiquated. For these reasons the Court finds the operational requirements in Section 10-06.1-12(6) do not violate the dormant Commerce Clause.[1]

### 2.  DISCRIMINATORY PURPOSE OR INTENT

The Plaintiffs contend the Corporate Farming Law was adopted with a discriminatory purpose, that being a preference for North Dakota family farm corporations to the detriment of out-of-state family farm corporations. In support of their contention, the Plaintiffs cite to the legislative history of the 1979 bill, which never became law, and the 1981 bill which did become law and now forms the core of North Dakota's Corporate Farming Law. The Defendants cite the historical record and the legislative history as not evidencing a discriminatory intent. The Defendants maintain the purpose of the law is to preserve family farms, both in-state and out-of-state alike.

To determine whether there was a discriminatory purpose behind a law, courts look to both direct and indirect evidence. Jones, 470 F.3d at 1269. Direct evidence includes statements by lawmakers and statements and conduct by drafters. Id. Indirect evidence includes "irregularities in the drafting process" that "hint at such a purpose." Hazeltine, 340 F.3d at 594.

The legislative history consists of approximately 160 pages. See Docket Nos. 67-7, 67-9, and 78-2). From this legislative history, Plaintiffs cite to nine statements which they contend offer direct evidence of a discriminatory intent. See Docket No. 72, p. 34. Only four of these statements

_____

[1]Despite the Court's finding that the operational requirements do not require a physical presence on the farm, it would be helpful if the Legislature adopted a clarifying definition or otherwise revised the statutory language to make it clear no actual physical presence on the farm is required.

are from legislators, the balance are from witnesses. Witness testimony carries little weight in assessing legislative intent as witnesses are not lawmakers. See Jones, 470 F.3d at 1269 (noting statements by lawmakers may evidence a discriminatory purpose); see also Premachandra v. Mitts, 753 F.2d 635, 639-40 (8th Cir. 1985) (discussing witness testimony and legislative history). Most of these statements have been discussed in relation to the operational requirements, and rejected. The Plaintiffs cite to Representative Olafson's statement that "the family farm is vital to ND's standard of living, and the right to incorporate will help in its preservation." See Docket No. 67-9, p. 1. This statement expresses a desire to protect family farms but it makes no mention of out-of-state or outside interests, and the Court does not see how it can be read as supporting discrimination against out-of-state interests or treating them differently than North Dakotans.

Only two of the legislative comments, from Senators Dotzenrod and Wright, referenced "outside corporations" coming into North Dakota to buy farm land. See Docket No. 67-7, pp. 4 and 16. Senator Dotzenrod stated that "there is nothing in this bill that states that an outside corporation with the qualifications of this bill couldn't come into North Dakota and buy land." See Docket No. 67-7, p. 4. Senator Wright expressed concern about "outside corporations coming in to buy farm land." See Docket No. 67-7, p. 16. However, when carefully examined, these comments do not support the Plaintiffs contention but rather seem to support the position of the Defendants. As these senators apparently read the bill, outside corporations were allowed to come into North Dakota and farm, as long as they met the other requirements of the family farm exception which are not challenged in this case. Such murky comments do not reveal a preference for North Dakota family farms over the interests of out-of-state family farms. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005) (noting legislative history is often murky, ambiguous, and contradictory). The Court is also mindful of the wise admonition that one friend in a crowd is

insufficient to prove legislative intent.  See Baptist Health v. Thompson, 458 F.3d 768, 775 n. 5 (8th Cir. 2006).

The Plaintiffs contend there is indirect evidence of a discriminatory intent against out-of-state interests because no studies appear in the legislative history to support the contention that the family farm exception would benefit family farms.  See Hazeltine, 340 F.3d at 594-95 (noting a lack of evidence that a law will accomplish its stated purpose can be seen as indirect evidence of a discriminatory purpose).  However, the legislative history in this case reveals otherwise.  The information gathered by the legislature included a statement of support from the Young Farmers and Ranchers, a presentation and report from the North Dakota State Tax Department on the tax consequences of the bill, a written analysis from Iowa State University professor Neil E. Harl regarding the advantages of allowing corporate farming, an analysis from attorney William Guy III of the income tax, estate planning, and other non-tax advantages and disadvantages of allowing farm incorporation, and testimony from a representative of Communicating for Agriculture regarding how enacting the family farm exception would help preserve family farms.  See Docket No. 67-9, pp. 25-28, 29-38, 39-40, 51-57, 58-61, and 69-71.  The consensus from these sources is that considerable tax and estate planning advantages would be available to family farmers if the family farm exception was enacted, and this would help preserve family farming.  See MSM Farms, Inc. v. Spire, 927 F.2d 330, 335 (8th Cir. 1991) (finding, in the context of an equal protection challenge, that "[t]he people of Nebraska have made a reasonable judgment that prohibiting non-family corporate farming serves the public interest in preserving an agriculture where families own and farm the land").

North Dakota's principle industry is agriculture.  See Coal Harbor Stock Farm, Inc.v. Meier, 191 N.W.2d 583, 591 (N.D. 1971).  North Dakota has had a Corporate Farming Law since 1932 when it was adopted via initiated measure.  The 1932 law prohibited domestic and foreign

corporations from "engaging in the business of farming or agriculture." Asbury Hosp. v. Cass County, 7 N.W.2d 438, 443 (N.D. 1943). The law also prohibited all corporations from acquiring and holding real estate regardless of its use. The law drew no distinctions between in-state and out-of-state corporations. "The public policy underlying the restrictions on corporate ownership of farmland or ranchland is rooted in the desire to preserve availability of rural agricultural land for use by family farmers." Stenehjem ex rel. State v. Crosslands, Inc., 782 N.W.2d 632, 637 (N.D. 2010); Stenehjem ex rel. State v. Nat'l Audubon Soc'y, Inc., 844 N.W.2d 892, 898 (N.D. 2014). The determination to "prohibit corporate farming as a business . . . was necessary to the economy of the State and the welfare of its citizens." Meier, 191 N.W.2d at 591. "It was the intent of the legislative assembly in enacting the corporate farming statute to prevent a tendency towards a monopoly by corporations in owning land and conducting farming operations." North Dakota Attorney General Opinion 46-54 (July 15, 1946) ("NDAG 46-54").

In 1981, the Legislative Assembly amended the Corporate Farming Law. The 1981 amendment continued the general prohibition against corporations owning land within the state, but included, for the first time, an exception allowing small family farms to incorporate, engage in farming, and own land. N.D.C.C. ch. 10-06 (1981). The Corporate Farming Law incorporated by reference the requirements and definitions of the Business Corporation Act in 1983, and the Limited Liability Company Act in 1993. 1983 N.D. S.L. ch. 131, § 4; 1993 N.D. S.L. ch. 54 § 2; 1993 N.D. S.L. ch. 92, § 8. A review of the legislative history shows the family farm exception was intended to help preserve family farms by allowing the use of favorable tax structures, assisting with estate planning, protecting assets, limiting personal liability, making it easier to raise capital, and making it easier to provide employee benefits. See Docket No. 67-9, pp. 25-31, 51-61.

A careful review of the legislative history does not reveal an intent to discriminate against

out-of-state interests. Rather, the purpose was to promote and preserve family farms by giving them the ability to use the corporate form, with some limitations, in an increasing complex and connected world. For instance, it was thought the corporate form would offer tax advantages and make it easier to pass the family farm from generation to generation. From the Court's review of the available legislative history, the purpose of enacting the family farm exception was to help keep family farming viable.

In some sense, every state law is enacted to further state interests. But this does not mean every state law violates the Commerce Clause. There must be a showing of discriminatory purpose. There has long been an anti-corporate sentiment in North Dakota as evidenced by the 1932 ban on corporate farming which applied to all corporations, big and small, in-state and out-of-state alike. The Commerce Clause does not guarantee access to the corporate form. State v. J.P. Lamb Co., 401 N.W.2d 713, 717 (N.D. 1987) (noting a corporation is a creature of statute which cannot exist without the consent of the state and which is subject to whatever conditions a state may impose). The 1981 family farm exception was intended to help preserve family farms through the limited use of corporations. Economic protectionism was not its intent. Things went somewhat awry in 1983 and 1993 when the Business Corporation Act and the Limited Liability Company Act definitions were incorporated by reference, but this does not change the purpose of the 1981 family farm exception which the Plaintiffs challenge. The Court finds as a matter of law that the family farm exception does not have a discriminatory purpose.

### 3.    DISCRIMINATORY EFFECT

On its face, the family farm exception prevents foreign corporations and foreign limited liability companies from engaging in the business of farming or owning farm land in North Dakota

while permitting North Dakota corporations and limited liability companies to do so. This is, by definition, a discriminatory effect. See SDDS, Inc. v. State of S.D., 47 F.3d 263, 267 (8th Cir. 1995) (collecting cases discussing and finding discriminatory effects); Pete's Brewing Co. v. Whitehead, 19 F. Supp. 2d 1004, 1014 (W.D. Mo. 1998) ("when a statute gives in-state companies an advantage over out-of-state companies, it has a discriminatory effect."). Accordingly, the Court finds the family farm exception has a discriminatory effect.


4.    **RIGOROUS SCRUTINY**

If a law fails any one of the three first-tier tests for facial discrimination, discriminatory purpose, or discriminatory effect, then the law survives only if the state "can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." C & A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 392 (1994). The State concedes the family farm exception cannot survive rigorous scrutiny and it has made no attempt to explain why other means are not available to promote the State's interest in protecting family farms. See Docket No. 65, p. 31. In addition, since the Court has determined the family farm exception discriminates both in its effect and on its face, the Court need not address the less rigorous second tier analysis. See Pike v. Bruce Church Inc., 397 U.S. 137 (1970).


E.    **SEVERANCE**

Having determined the family farm exception violates the dormant Commerce Clause, the Court must address whether the entire law must be enjoined or whether severance of some portion of the law will suffice as a remedy. The Plaintiffs contend Chapter 10-06.1 should be struck down in its entirety. The Defendants contend the offending language in the family farm exception can

simply be severed and the remainder of the law allowed to stand. The Court agrees with the Defendants that severing the offending language is the most appropriate remedy.

Severance is the preferred remedy under both North Dakota and federal law. See Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 328-29 (2006) (noting the United States Supreme Court's preference for enjoining only the unconstitutional language while leaving the remainder intact); Tooz v. State, 38 N.W.2d 285, 291 (N.D. 1949) (stating severance is preferred and "[i]t would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional"); First Bank of Buffalo v. Conrad, 350 N.W.2d 580, 584 (N.D. 1984) ("The declaration of part of a law as being unconstitutional does not require a court to also declare the remainder void, unless all provisions are so connected and dependent upon each other that it cannot be presumed that the legislature would have enacted the valid sections without the unconstitutional sections."); Kessler v. Thompson, 75 N.W.2d 172, 189 (N.D. 1956) ("It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part and that if the valid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected."). North Dakota law also contains a general savings clause which reinforces the principle of preferring severance to voiding an entire enactment. N.D. C.C. § 1-02-20 (providing that "[i]n the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered."); Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414, 425 (N.D. 1967)

(noting the applicability of Section 1-02-20 to the entire North Dakota Century Code).

In determining whether severance is permissible, the primary question involves the ascertainment of legislative intent. Johanneson, 153 N.W.2d at 424. Phrased another way, would the Legislative Assembly have enacted the law absent the offending provisions? In this case, the answer is clearly yes. North Dakota's Corporate Farming Law and the general prohibition on all corporate land ownership became law in 1932. See 1933 N.D. S. L. ch. 89. The family farm exception was not enacted until 1981. See 1981 N.D. S. L. ch. 134, § 4. The Corporate Farming Law was on the books for nearly fifty years before the family farm exception was added in 1981. The Corporate Farming Law incorporated by reference the requirements and definitions of the Business Corporation Act in 1983 and Limited Liability Company Act in 1993. Since the Corporate Farming Law was originally enacted without the family farm exception there is no reason to believe the Legislature would have preferred to repeal the entire law in 1981 when the family farm exception was added. When Governor Link vetoed a version of the family farm exception in 1979, the Legislature did not push for full scale repeal but again introduced the legislation in 1981, and was successful. Further, the Corporate Farming Law includes other exceptions, which are not challenged in this lawsuit, such as the exception for surface coal mining (N.D.C.C. § 10-06.1-06); certain industrial and business purposes (N.D.C.C. § 10-06.1-07); cooperatives (N.D.C.C. § 10-06.1-08); and certain non-profit organizations (N.D.C.C. §§ 10-06.1-09 and 10-06.1-10). These exceptions would be unnecessarily voided if the Court enjoined operation of the entire chapter as suggested by the Plaintiffs. The Court sees no reason to enjoin the Corporate Farming Law in its entirety, a law which operated on its own for nearly fifty years without the family farm exception, and which can clearly stand on its own. Indeed, all that is necessary is to enjoin the enforcement of the offending "domestic corporation" and "domestic limited liability company" language while

38

leaving the remainder of the family farm exception intact. Accordingly, the Court finds severance is the appropriate remedy.

## IV.    CONCLUSION

For the reasons set forth above, the Defendant Farmers Union's motion to dismiss (Docket No. 104) and its alternative motion for judgment on the pleadings (Docket No. 113) are **DENIED**. The Defendant Dakota Resource Council's motion to strike (Docket No. 93) is **DENIED**. The State's motion for partial summary judgment (Docket No. 64) and the Plaintiffs' motion for summary judgment (Docket No. 71) are **granted in part and denied in part** as explained herein. Count Two of the amended complaint is dismissed.

The Court further **ORDERS** and declares that the State is permanently enjoined from enforcing or seeking to enforce Section 10-06.1-12 of the North Dakota Century Code in a manner which limits its application to only North Dakota corporations and limited liability companies, and must permit corporations and limited liability companies organized under the laws of other states to utilize the family farm exception, so long as they meet the other requirements of the current law which are not the subject of this litigation.

**IT IS SO ORDERED**.

Dated this 21st day of September, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court
